**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PENNSYLVANIA CARE, L.L.C. d/b/a MINERS MEDICAL CENTER,<br><br>    Plaintiff,<br><br>        v.<br><br>ASHLEY BOROUGH and MIKE COLLINS, in his individual and official capacities,<br><br>    Defendants. | CIVIL ACTION NO. 3:10-CV-956<br><br>(JUDGE CAPUTO) |

**MEMORANDUM**

Presently before the Court is the defendants' motion to dismiss. (Doc. No. 6.)

The plaintiff in this matter is a limited liability company which operates a methadone treatment facility in Ashley Borough, Pennsylvania. In its complaint, the treatment facility alleges that the borough and its zoning officer engaged in various actions, including ordering the facility to shut down, in violation of its rights. The facility brings due process and equal protection claims under 42 U.S.C. § 1983, and discrimination claims under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act.

The borough and its zoning officer jointly move to dismiss. For the reasons explained below, the motion will be granted in part and denied in part.

**I. Background[1]**

Miners Medical Center is a limited liability company which provides mental health and substance abuse treatment, including methadone treatment. Miners Medical determined

---

[1] For purposes of deciding this motion, the facts in the complaint are assumed to be true, and are stated in the light most favorable to the plaintiff.

that an office location on Main Street in Ashley Borough would be a good location for a treatment center, and entered into a lease for office space in a shopping center at 43 S. Main Street in November 2008. The office space that was leased is zoned to permit medical offices. In February of 2009, Miners Medical submitted a construction permit application to the borough, and was issued a construction permit in February 2009. Miners Medical explained to the borough's zoning office that it intended to operate a treatment center, and was informed that it did not need to submit a zoning permit application because its proposed use as a medical center was permitted as of right. In May 2009, the construction was completed, and the borough's zoning officer completed its final inspection of the medical office. The borough issued a certificate of occupancy to the medical office.

In October 2009, Joe Kordek, the borough's zoning officer, asked a representative of Miners Medical, in a denigrating tone, if the center would be treating drug addicts. In April 2010 , the borough's solicitor (who represents a competing methadone treatment facility) stated that the borough was upset because the treatment center "snuck into" the borough. Later that month, a member of the zoning hearing board entered the medical office and angrily asked if methadone was used.

On April 25, 2010, Mike Collins, a zoning officer, informed the treatment center that he was going to shut it down. The next day, the center opened for business.

On April 28, 2010, a brick was thrown through a closed window of the office. Additionally, individuals massed outside the office and screamed insults at staff and patients. That same day, Mike Collins sent a letter to the center ordering it to stop using the medical office. On April 30, 2010, the borough and Mike Collins contacted Family Dollar's corporate office (the shopping center that housed Miners Medical also housed a Family Dollar store)

2

and made derogatory statements about the presence of the treatment center.

Miners Medical filed the present action on May 4, 2010 against the borough and Mike Collins. It alleges that by falsely informing the public that the center was violating the law, the borough incited the public to engage in violent and intimidating conduct toward the treatment center, its employees, and patients. Patients cancelled appointment and the treatment center lost money.

Miners Medical brings constitutional claims pursuant to 42 U.S.C. § 1983. It alleges that the defendants violated its Fourteenth Amendment rights to due process and equal protection. Additionally, the plaintiff brings claims under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act.

The defendants move to dismiss. The Court requested supplemental briefing on whether the plaintiff had exhausted its administrative remedies. The zoning appeal has resolved the dispute in the plaintiff's favor and the plaintiff's constitutional and statutory claims are now ripe for review.

The defendants move for dismissal on four grounds: first, they argue that the plaintiff's request for declaratory and injunctive relief is barred by the doctrine of *Younger* abstention; second, they argue that the plaintiff's claims are barred by the *Rooker-Feldman* doctrine; third, they argue that the disability discrimination claims fail as a matter of law; and finally, they argue that Michael Collins is entitled to qualified immunity.

## II. Discussion

**A. Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. In deciding a 12(b)(6) motion, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Dismissal is appropriate only if a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which is to say "enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 319 (3d Cir. 2010) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (alteration in *Arista Records*)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* at 1950.

In line with the pleading standards established by the Supreme Court's decisions in *Twombly* and *Iqbal*, the Third Circuit has instructed district courts to conduct a two-part

analysis when disposing of a motion to dismiss for failure to state a claim. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This analysis proceeds as follows:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Id.* at 210–11 (internal citations omitted).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* Here, the defendants have attached documents to their motion to dismiss which are not necessary to the plaintiff's claims. Under Federal Rule of Civil Procedure 12(d), if a party presents matters outside the pleadings that are not excluded by the court, the motion must be converted to one for summary judgment and all parties must be given notice and the opportunity to respond. Such conversion is unnecessary here, because the Court excludes these documents and will not consider them.

**B. *Younger* Abstention**

The defendants argue that the plaintiff's request for injunctive and declaratory relief is barred by the abstention principles enunciated by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971).

The doctrine of *Younger* abstention only applies where state court proceedings are pending or ongoing, where they implicate an important state interest, and where they afford an adequate opportunity to raise constitutional issues. *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005) (citations omitted). Because the parties have represented in their briefing (Docs. 11, 13) that there is no pending state court action, *Younger* abstention does not apply and dismissal on this ground is not appropriate. *See Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir. 2006).

## C. *Rooker-Feldman*

The defendants argue that the *Rooker-Feldman* doctrine precludes the court from hearing this dispute.

Under the *Rooker-Feldman* doctrine, a federal court lacks subject matter jurisdiction "if the relief requested would effectively reverse a state court decision or void its ruling." *Taliaferro*, 458 F.3d at 192. *Rooker-Feldman* is a "narrow doctrine" which "applies only in limited circumstances." *Lance v. Dennis*, 546 U.S. 459, 464–66 (2006). The *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Such a case essentially invites lower federal courts to act in an appellate capacity over state courts, a function which is reserved by statute to the Supreme Court alone. *Great W. Mining & Mineral Co. v. Rox Rothschild LLP*, 615 F.3d 159, 164 (3d Cir. 2010).

However, when "a federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment, *Rooker-Feldman* is not a bar to federal jurisdiction." *Great W. Mining & Mineral Co.*, 615 F.3d at 167 (citing *Coles v. Granville*, 448 F.3d 853, 859 (6th Cir. 2006); *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006)). The *Rooker-Feldman* doctrine is "not implicated 'simply because a party attempts to litigate in federal court a matter previously litigated in state court.'" *Id.* at 166 (citing *Exxon Mobil*, 544 U.S. at 293). So long as the federal plaintiff "presents some independent claim, *albeit one that denies a legal conclusion* that a state court has reached in a case to which he was a party . . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* (citing *Exxon Mobil*, 544 U.S. at 293) (emphasis added)). "A useful guidepost" in determining whether *Rooker-Feldman* applies "is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." *Id.* (citing *McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007); *Turner v. Crawford Square Apartments III, LP*, 449 F.3d 542, 547 (3d Cir. 2006)).

Applying this "useful guidepost," it is clear that the plaintiff is not complaining of a state court *judgment*, but rather of the defendants' actions. Indeed, the plaintiff brought this lawsuit mere days after the offending decision to stop its operations was made. Nor are the plaintiff's claims inextricably intertwined with the state court action. The decision as to whether the plaintiff's business violated zoning laws does not implicate its substantive due process rights or rights under disability laws. Thus, *Rooker-Feldman* does not apply and dismissal on this ground will be denied.

**D. Disability Discrimination Claims**

The defendants argue that the plaintiff's claims under the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) cannot survive as a matter of law.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such a disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The RA similarly prohibits discrimination but the language requires that an individual be discriminated against *solely by reason* of disability. *New Directions Treatment Services v. City of Reading*, 490 F.3d 293, 301 (3d Cir. 2007) (citing *Newman*, 60 F.3d at 157–58); *Baird* ex rel. *Baird v. Rose*, 192 F.3d 462, 468 (4th Cir. 1999) (noting that the language of the ADA and RA "regarding the causative link between discrimination and adverse action is significantly dissimilar."). The ADA grants to "any person alleging discrimination on the basis of disability," 42 u.S.C. § 12133, the right to obtain relief, and the RA grants the right to relief to "any person aggrieved, " 29 U.S.C. § 794a(a)(2). *See also Addiction Specialists v. Twp. of Hampton*, 411 F.3d 399, 405 (3d Cir. 2005) (noting that entities may bring a claim for relief where discrimination is based on the entity's association with disabled clientele).

Discrimination includes denial of "equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." *Addiction Specialists*, 411 F.3d at 406 (citing 28 C.F.R. § 35.130(g)).

Here, the complaint's allegations suggest that zoning regulations were violated

because of the plaintiff's association with individuals with disabilities. The plaintiff has alleged facts suggesting that discriminatory animus towards individuals recovering from drug addiction led to its being shut down and required to pursue a permit, even though no permit was required under the zoning regulations. This is sufficient to make out a claim for relief under the RA or ADA. Thus, the motion to dismiss these claims will be denied.

**E. Qualified Immunity**

The defendants further argue that zoning officer Michael Collins is entitled to qualified immunity.[2]

The doctrine of "qualified immunity . . . 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'"*Blackhawk v. Pennsylvania*, 381 F.3d 202, 215 (3d Cir. 2004) (internal citation omitted)).

Qualified immunity shields government officials from civil damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether a defendant is entitled to qualified immunity, a court considers whether the official's acts violated a constitutional or statutory right and (if so) whether that right was clearly established at the time of the violation. *See Yarris v. County of Del.*, 465 F.3d 129, 140–41 (3d Cir. 2006) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."

---

[2] The defendants do not argue for absolute quasi-judicial immunity for Collins, and therefore the Court does not address it. *See Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011); *Omnipoint Corp. v. Zoning Hearing Bd.*, 181 F.3d 403, 409 (3d Cir. 1999) (holding that a zoning board acted in a quasi-judicial capacity in denying a conditional use permit).

*Pearson v. Callahan*, 129 S. Ct. 808, 818.  Regarding the second step of the test, the United States Supreme Court has held: "[f]or a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right'." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal citation omitted).

The constitutional rights at issue are the substantive due process right to use property that one has leased as well as the equal protection of the law.

**(1) Substantive Due Process**

As a threshold matter, before bringing a substantive due process claim a plaintiff must establish that "he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139–40 (3d Cir. 2000) (citing *Woodwind Estates Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000)). Additionally, "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." *Id.* at 140.  Instead, only property interests that are "fundamental" under the United States Constitution are protected by substantive due process. *Id.* Although "ownership is a property interest worthy of substantive due process protection," *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 600 (3d Cir. 1995), *abrogated on other grounds by United Artists Theatre Cir., Inc. v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003), the Third Circuit has "so far limited non-legislative substantive due process review to cases involving *real property* ownership," *Nicholas*, 227 F.3d at 141 (emphasis added). *See Deblasio*, 53 F.3d at 601 (noting that "a *land-owing* plaintiff" can state a substantive due process claim) (emphasis added).

"A plaintiff who wishes to pursue a claim for an alleged violation of the right to substantive due process embarks on a difficult undertaking, especially if the claim involves zoning or other real property regulatory actions by a governmental body." *Bettendorf v. St. Croix County*, 631 F.3d 421, 426 (7th Cir. 2011) (quoting *Eternalist Foundation, Inc. v. City of Platteville*, 225 Wis. 2d. 759, 775, 593 N.W.2d 84 (Wis. App. 1999)). Here, qualified immunity is justified because the plaintiff has not shown that the right for a leaseholder (as opposed to a *landowner*) to use its property is fundamental, nor has it shown that it has suffered a governmental *deprivation* (as opposed to temporary restraint) of any property right under the Fourteenth Amendment. Because case law does not clearly establish that a fundamental right was at stake, Collins is entitled to qualified immunity on the due process claims.

### (2) Equal Protection

The plaintiff does not belong to a protected class; thus, to state an equal protection violation it must allege that Collins intentionally and with no rational basis treated it differently from others similarly situated. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal citations omitted). Here, the complaint's allegations suggest that, despite the fact that no zoning permit was required, Collins exercised his authority to shut it down because of a discriminatory animus. If true, Collins' conduct violated clearly established law. Thus, qualified immunity is not appropriate at this time, but may be raised in a properly supported motion for summary judgment if, for example, the defendants can show that Collins made a reasonable mistake of fact or law.

**F. Damages Under the RA and ADA Against Collins**

The defendants further move to dismiss any claims against Collins for damages under the RA and ADA, because monetary damages against individuals are unavailable under these statutes. As the plaintiff notes, the complaint only seeks damages from the borough in its RA and ADA claims at Counts II and III of the complaint. Therefore, dismissal is unnecessary.

### III. Conclusion

For the reasons explained above, the defendants' motion (Doc. 6) will be granted in part and denied in part.  Collins will be granted qualified immunity on the substantive due process claim. The remainder of the defendants' motion will be denied. An appropriate order follows.

March 25, 2011　　　　　　　　　　　　　　　/s/ A. Richard Caputo
Date　　　　　　　　　　　　　　　　　　　　A. Richard Caputo
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PENNSYLVANIA CARE, L.L.C. d/b/a MINERS MEDICAL CENTER,<br><br>    Plaintiff,<br><br>        v.<br><br>ASHLEY BOROUGH and MIKE COLLINS, in his individual and official capacities,<br><br>    Defendants. | NO. 3:10-CV-956<br><br>(JUDGE CAPUTO) |

## **ORDER**

**NOW**, this 25th day of March, 2011, **IT IS HEREBY ORDERED** that:

(1) The defendants' motion to dismiss (Doc. 6) is **GRANTED IN PART and DENIED IN PART**.

(2) Defendant Collins is granted qualified immunity on the substantive due process claim at Count I, and this claim is **DISMISSED** against him.

(3) The remainder of the defendants' motion to dismiss is **DENIED**.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge